**Vickie KENNERLY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–00–230–CR.**

Court of Appeals of Texas,
Waco.

March 7, 2001.

Staci Biggar, Houston, for appellant.

John B. Holmes, Jr., Harris County District Attorney, Carmen Castillo Mitchell, Harris County Asst. District Attorney, Houston, for appellee.

Before Chief Justice DAVIS, Justice GRAY, and Chief Justice McDONALD (Retired).

## OPINION

FRANK G. McDONALD, Chief Justice (Retired).

Appellant Vickie Kennerly appeals her conviction for Recklessly Causing Injury to a Disabled Individual, for which she was sentenced to ten years in the Texas Department of Criminal Justice—Institutional Division, suspended for ten years, and a $1000 fine.

Appellant worked for Texas Home Management as a caretaker at Appleridge. Texas Home Management is a provider of group homes for mentally disabled persons. Appleridge was a four bedroom home which housed six mentally disabled women including Trenia Wright, the complainant.

Appellant had worked for Texas Home Management for six years and received annual training for first aid, CPR, and OSHA training on hazardous products, and what to do if someone comes in contact with hazardous products.

All the staff went through this training and knew that Clorox was a hazardous product which should be kept away from residents.

Trenia Wright was mentally disabled and had cerebral palsy. She used a walker to get around, and was unsteady on her feet without her walker.

On Sunday, April 12, 1998, Appellant was working at Appleridge. At around 5 p.m., Trenia fell in the hall and defecated there. Appellant came to the hall and told Trenia to get up and clean it up. Trenia told Appellant she could not clean it up by herself, and somehow managed to get to her room. Appellant got a bottle of Clorox and poured it on the feces in the hall. Trenia came out of her room and fell into the feces and the Clorox that had been poured over the feces. The Clorox fumes were so strong that they affected everyone in the home. Appellant and a co-worker evacuated all of the residents, except Trenia, to stand outside. Appellant left Trenia in the hall lying in the bleach for over an hour. As the end of Appellant's shift approached at 7 p.m., Appellant put on gloves, drug Trenia into the hall bathroom, cleaned the hallway, and left the home, with Trenia still lying on the bathroom floor.

Alberta Walker, a caretaker scheduled to work the next shift, arrived at 7 p.m. Trenia was lying on the bathroom floor. Alberta and another caretaker helped Trenia up. Alberta saw the chemical burns on Trenia's body, which covered her legs, arms, stomach and back. Alberta and the other caretaker each called Bessie Moore, their supervisor, and informed her of the situation. Bessie said she would take Trenia to the doctor the next morning. Appellant never communicated with Bessie.

Trenia slept Sunday night and by morning, her skin turned from dark black to pink over a large portion of her body. Monday morning, April 13, Bessie took Trenia to Dr. Yalamanchile. The doctor examined Trenia, gave her pain pills and a shot and told Bessie to make an appointment for Trenia to go to the whirlpool. Tuesday, Bessie stayed at Appleridge with Trenia. Tuesday night, another caretaker, Philomena Zacaheaus, stayed at Appleridge. At 1 a.m. Wednesday morning, Trenia fell out of her bed and Philomena went to check on her. Trenia's skin was all over the sheets. Trenia talked with Philomena for a while and then became non-responsive. Philomena called 911. Trenia was taken to the emergency room and then admitted to the hospital at 6 a.m. Wednes-

day. Dr. Woodrow Dolino, the emergency room doctor, testified Trenia had extensive chemical burns all over her body, and was extremely dehydrated which was a complication caused by her chemical burns. Trenia died 20 hours after being admitted to the hospital from multi symptom failure caused by the burns.

Dr. Dolino testified that if a person does not intervene and wash off bleach from the skin within an hour of exposure, no matter what a person does after that, nothing will make a difference in the outcome. Dr. Dolino determined that there was either inadequate intervention within an hour of Trenia's exposure to the bleach, or there was no intervention for an hour. He testified that either the chemical was not washed off from Trenia's body, or that she was not removed from the chemical for at least an hour.

Appellant was terminated from her job because the company determined she was neglectful for not intervening and for allowing Trenia to lie on her back in the Clorox for several hours. The Department of Human Services investigated and determined that the staff in charge of Trenia either failed to take action to protect Trenia, or took action which harmed her.

Dr. Eric Comstock, an expert on toxicology, testified that when Clorox contacts the skin, it penetrates the skin and the longer the contact without washing it off, the worse the injury will be, and the deeper the burn will be. The destruction of skin causes dehydration. If someone is exposed to Clorox and it was not washed away within an hour or two, they would have a serious injury. If the Clorox had been washed off with the first hour of contact, it would have reduced the severity and extent of the injury.

Appellant testified that she poured Clorox on the hallway floor where Trenia had defecated. Trenia was in the hallway floor

on her back. Appellant testified she assisted the other residents out of the house, that she told Trenia to get up, and that Trenia would not. Just before 7 p.m., Appellant put on gloves and drug Trenia into the restroom, left Trenia on the floor of the restroom, cleaned up the hallway and left the house.

Appellant was indicted for recklessly causing serious bodily injury to Trenia Wright, a disabled individual, by leaving her lying in chemicals, and Appellant had a legal and statutory duty to act and Appellant had assumed care, custody and control of Trenia.

The jury found Appellant guilty, and the judge thereafter assessed punishment. Appellant appeals on two points of error asserting the evidence legally and factually insufficient to show that Appellant caused serious bodily injury to a disabled individual.

When reviewing the legal sufficiency of the evidence, we examine all the evidence to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781 (1979). In making this examination, we view the evidence in the light most favorable to the verdict. *Santellan v. State*, 939 S.W.2d 155, 160 (Tex. Crim.App.1997). If there is any evidence that establishes guilt beyond a reasonable doubt, the conviction is not subject to reversal. *Anderson v. State*, 871 S.W.2d 900, 902 (Tex.App.—Houston [1st Dist.] 1994, no pet.).

When reviewing a claim of factual sufficiency of the evidence, we view all the evidence without the prism "in the light most favorable to the prosecution." *Clewis v. State*, 922 S.W.2d 126, 131 (Tex. Crim.App.1996). We set aside the verdict only if it is so contrary to the overwhelm-

ing weight of the evidence as to be clearly wrong and unjust. *Jones v. State*, 944 S.W.2d 642, 647 (Tex.Crim.App.1996); *Santellan, Id.*, at 164; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App.2000).

■ A jury verdict is not manifestly unjust merely because the jury resolved conflicting views of the evidence in favor of the State. *Cain v. State*, 958 S.W.2d 404, 409 (Tex.Crim.App.1997).

■ A person commits an offense if he or she recklessly by omission causes bodily injury to a disabled individual. TEX.PEN. CODE § 22.04(a). "Omission" means the failure to act. TEX.PEN.CODE § 1.07(a)(39). An omission that causes serious bodily injury to a disabled individual older than 14 years is conduct constituting an offense if: 1) the person has a legal or statutory duty to act; or 2) the person has assumed the care, custody, or control of a disabled individual. TEX.PEN.CODE § 22.04(b). Serious bodily injury means bodily injury that creates a substantial risk of death or that causes death. TEX.PEN.CODE § 1.07(a)(46).

Appellant concedes that Trenia was a disabled individual; that Appellant had a legal and statutory duty to act; and that Appellant had assumed the case, custody and control of Trenia. Appellant challenges the legal and factual sufficiency of the evidence regarding Appellant's recklessness and causation, and asserts Trenia's injury and death was caused through the inaction of a group of people.

It was undisputed that Appellant received training in how to handle hazardous materials and what to do in case of exposure to hazardous materials. It was undisputed that Appellant poured bleach on the tile floor of the hallway, and that Trenia laid in the bleach for up to two hours. It was undisputed that Appellant, who was Trenia's caretaker, did not remove Trenia from the bleach for an hour or more. The evidence reflected that Appellant put gloves on and drug Trenia into the bathroom and left her there on the floor when Appellant left the home at the end of her shift.

Dr. Dolino testified that if a person does not intervene and wash off bleach from the skin of a person within an hour from exposure, that nothing will make a difference in the outcome. Dr. Dolino determined that there was either inadequate intervention within an hour of Trenia's exposure to the bleach or there was no intervention. He testified that either the chemical was not washed off of Trenia's body or she was not removed from the chemicals for at least an hour. Dr. Comstock's testimony was substantially the same.

Appellant left Trenia lying in the bleach Appellant had poured in the hallway for a minimum of an hour without helping Trenia get out of the bleach. Appellant was responsible for the protection of Trenia, and Appellant was trained in the area of hazardous chemicals and treatment for the exposure to same. Trenia's prolonged exposure to the bleach, over 40 to 50% of her body, caused severe and extensive chemical burns which led to dehydration, system failure and ultimately to death.

The jury was entitled to believe that Appellant recklessly, by omission, caused serious bodily injury to Trenia, a disabled individual.

The evidence was both legally and factually sufficient to sustain Appellant's conviction.

Both Appellant's points are overruled.

The judgment is affirmed.