Richard Allen **PAYTON**, Sr., Appellant,

v.

The **STATE** of Texas, State.

No. 2–02–043–CR.

Court of Appeals of Texas, Fort Worth.

May 1, 2003.

John D. Nation, Dallas, for Appellant.

Bruce Isaacks, Criminal District Attorney, Charles E. Orbison, Paige McCormic, Lori Maraine, Assistant Criminal District Attorneys, Denton, Matthew Paul, State Prosecuting Attorney, Austin, for State.

PANEL A: CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

Appellant Richard Allen Payton, Sr. appeals his conviction of recklessly causing serious bodily injury to a child under the age of fourteen by failing to obtain reasonable medical care and intentionally or knowingly causing bodily injury to a child under the age of fourteen by failing to protect the child from his biological father. Appellant argues that the evidence is le-

gally insufficient to support his conviction. We affirm.

## I. Factual Background

Appellant received custody of his grandchildren, K.P. and T.P., from his son, Richard Allen Payton, Jr.[1] K.P. was two to three months old when appellant received custody, and appellant then received custody of T.P. six weeks after his birth. Richard visited his children approximately once a week.

On September 3, 2000 appellant, Richard, Richard's girlfriend, Kelly Woods, and the two children shopped at Trader's Village from 9:00 a.m. to around 1:00 p.m. They went to Wal-Mart for some food and then spent the rest of the afternoon together at appellant's home.

Richard testified that the group stayed together the whole day, and when he and Kelly left around 7:30 p.m., eighteen-month-old T.P. appeared perfectly normal. Kelly also testified that when they left appellant's home T.P. was fine.

Between 8:30 and 8:40 a.m. the next day, appellant saw T.P. crying in the hallway and lying on the floor. Appellant picked him up, changed his diaper, and gave him a bottle. He noticed that T.P. was having difficulty holding the bottle. Appellant immediately went to T.P., and noticed that the baby's feet were cold, and he was not waking up. Appellant then called his friend, Theresa Ferguson, who was a licensed vocational nurse. It took Theresa almost fifteen minutes to get to appellant's home, and once she arrived, it was apparent that T.P. needed emergency medical attention.

Theresa called 911 and told the operator that T.P. was non-responsive and may have aspirated since he had vomited on himself. While assessing T.P., Theresa also found a bruise in the middle of his forehead and some marks that resembled insect bites on his abdomen and lower legs. The 911 operator dispatched an ambulance at 9:22 a.m., and it arrived at 9:32 a.m.

Upon arrival, the emergency medical technician observed that T.P. was unresponsive, but still alive, so he called for Care Flite. Medical technician Mark Wallace and paramedic Brian Gilmore both testified that the seriousness of T.P.'s condition was recognizable. They observed that T.P. had bruises above his left eye, on the midline of his abdomen, and on his right hip. He had scratches and scrapes around his nose and mouth. Dried blood was also visible on his nose. Paramedic Gilmore further testified that T.P.'s abdomen was "rigid to the touch and somewhat extended," which indicated internal bleeding. The Care Flite nurse also noticed T.P.'s abdomen and thought he was bleeding internally, so they needed to "hurry up and go."

Once T.P. arrived at Cook's Hospital around 10:45 a.m., the doctors and nurses working on him focused on life-saving efforts. Emily Collar, a registered nurse, testified that T.P. had bruising all along his side, bottom, and lower part of his back. She considered such bruising unusual for a child eighteen months old. When she removed his diaper, she observed that his bottom was blue, his rectum was dilated, and he had blood coming from his penis. The doctors pronounced T.P. dead at 11:04 a.m.

Autopsy reports established T.P.'s cause of death as a severe blunt force trauma to the head and abdomen. Part of T.P.'s kidney was lacerated, which resulted in slow internal bleeding. Approximately

---

1. For purposes of this opinion, Richard Allen Payton, Sr. will be referred to as appellant and Richard Allen Payton, Jr. will be referred to as Richard.

two-thirds of T.P.'s blood volume bled out into his abdomen. Doctors testified that T.P. may have received the injuries anywhere from ten to sixteen hours before death.

Appellant was charged with (1) intentionally or knowingly causing serious bodily injury to a child by striking or causing T.P. to strike an unknown object or surface, (2) intentionally or knowingly causing serious bodily injury to a child by omission, specifically, failing to obtain reasonable medical care for T.P. when appellant had assumed care, custody, and control of the child, and (3) intentionally or knowingly causing serious bodily injury to a child by omission, specifically, failing to protect T.P. from Richard.

The jury found appellant not guilty on count one, guilty on count two of the lesser-included offense of recklessly causing serious bodily injury by failing to obtain reasonable medical care, and guilty on count three of the lesser-included offense of intentionally or knowingly causing bodily injury by failing to protect T.P. from Richard. The jury assessed appellant's punishment at twenty years' confinement and a $10,000 fine for count two and ten years' confinement, to run concurrently, and a $10,000 fine for count three.

## II. Failure to Obtain Reasonable Medical Care

In his first point, appellant contends that the evidence was legally insufficient to prove that he caused serious bodily injury by failing to seek reasonable medical care for T.P. *See* TEX. PENAL CODE ANN. § 22.04 (Vernon 2003). He argues that the State was required to prove that he intended to cause serious bodily injury by omission. Because the jury found appellant not guilty of intentionally causing serious bodily injury but convicted appellant on the lesser-included offense of recklessly caus-

ing serious bodily injury by omission, the jury did not believe that appellant intended to cause serious bodily injury. Thus, we must review the record to determine if the evidence is legally sufficient to establish that appellant acted recklessly.

A person acts recklessly when he is aware of, but consciously disregards, a substantial and unjustifiable risk that the result will occur. *Id.* § 6.03(c). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. *Id.*

Under section 22.04, it is not sufficient for the State to prove that the appellant failed to provide medical care for a serious bodily injury. *Dusek v. State*, 978 S.W.2d 129, 133 (Tex.App.-Austin 1998, pet. ref'd). Instead, it is necessary to prove that T.P. suffered serious bodily injury because appellant failed to provide him medical care. *See id.*

Here, the jury heard testimony that appellant used to be an emergency medical technician and taught classes in that field. He changed T.P.'s diaper that morning, and the emergency room nurse testified that when she later changed his diaper, there was blood in his diaper and on his penis. The bleeding from his penis was indicative of internal bleeding. Dr. Devillier testified that T.P.'s injuries occurred ten to twelve hours before his death, and T.P. would have been showing symptoms of the injury. He based this conclusion on T.P.'s active bleed. Thus, the jury could reasonably infer that T.P. was bleeding that morning, and appellant would have noticed it. Also, the emergency room nurse testified that it was unlikely that T.P. would have been moving or walking

around earlier that morning with his extensive injuries.

Although appellant called Theresa, who was an LVN, he still admitted that T.P. had been in the lethargic condition for about an hour before the 911 call. He did nothing during the approximately fifteen minutes that it took for Theresa to get to his home even though he knew it usually took her only five minutes to get there. Once she assessed the situation, she immediately called 911 because it was apparent that T.P. needed emergency medical attention. It was also apparent to the emergency room nurse, the emergency medical technician, and the paramedic that "every minute count[ed]," and T.P. was in serious condition. *See Sparks v. State*, 68 S.W.3d 6, 10 (Tex.App.-Dallas 2001, pet. ref'd) (noting vomit and a swollen abdomen as "signs of distress").

Although Dr. Devillier testified that it would depend on a parent's comfort level as to whether or not he called 911 when a child was listless and weak, he did admit that he would expect someone with emergency medical training to be more aware of the signs and symptoms of a seriously ill child than a layperson. When the State asked him about a parent who waited an hour to an hour and a half to call emergency care, he said that "it would· be disadvantageous to not have called ... medical care." Furthermore, the State asked Dr. Devillier if the outcome would have been different had the child received medical care shortly after the injury occurred. He responded that although T.P. may have had long-term health problems, it was possible that he may have lived. The medical examiner also testified that internal bleeding is the type of injury that gets progressively worse. As the blood begins to accumulate, a child will get irritable, cranky, and will cry because of the pain. Thus, it was reasonable for the jury to infer that T.P. suffered a serious bodily injury because appellant failed to provide him medical care. *See Dusek*, 978 S.W.2d at 133.

■ Based on the facts that appellant delayed seeking medical treatment for T.P. when the medical evidence showed that T.P. had visible signs of distress, appellant had emergency medical training, and Dr. Devillier stated that it was possible that T.P. would have survived if he had received medical care shortly after the injury occurred, the jury could have found that appellant acted recklessly and grossly deviated from the standard of care that an ordinary person would have exercised under all the circumstances as viewed from his standpoint. *See* TEX. PENAL CODE ANN. § 6.03(c). Accordingly, after reviewing the record and applying the appropriate standard of review,[2] we hold that the evidence is legally sufficient to support the jury's verdict that appellant recklessly caused serious bodily injury by failing to obtain reasonable medical care for T.P.[3] Therefore, we overrule appellant's first point.

### III. Failure to Protect

■ In his second point, appellant argues that the evidence is legally insufficient to convict him of intentionally or knowingly causing bodily injury to a child by failing to protect T.P. from Richard.

■ A person acts intentionally with respect to the result of his conduct when it

---

**2.** *See Emery v. State*, 881 S.W.2d 702, 705 (Tex.Crim.App.1994) (providing legal sufficiency standard of review), *cert. denied*, 513 U.S. 1192, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995); *Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex.Crim.App.1992) (same), *cert. denied*, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993).

**3.** *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

is his conscious objective or desire to cause the result. TEX. PENAL CODE ANN. § 6.03(a). A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b). Within the context of section 22.04, a defendant "knowingly" causes injury to a child when he is aware with reasonable certainty the injury would not result "but for" the defendant's conduct. *Patterson v. State,* 46 S.W.3d 294, 302 (Tex.App.-Fort Worth, 2001, no pet.). Therefore, it logically follows that when the conduct is an omission, proof that a defendant knowingly caused the result requires evidence that the defendant was aware with reasonable certainty the injury would have been prevented had the defendant performed the act that was omitted. *Id.*

After reviewing the record, we hold that the evidence is legally sufficient to convict appellant of knowingly causing bodily injury to a child by failing to protect T.P. from Richard. Richard testified that he and his wife lived with appellant before the children were taken away from him because of the mother's abuse. Appellant was home when the mother hurt K.P., and appellant "sat by while K.P. screamed in the bathroom."

Robert Harden, a security consultant assisting in the investigation, interviewed appellant and discussed Richard's abusive behavior. Harden testified that Richard had kicked one of appellant's dogs earlier in the day of September 3 and caused the dog to have a seizure. He further testified that Richard would often trip K.P. as she ran by causing her to fall on her face. Harden stated that appellant often heard K.P. crying when she was with Richard and when appellant went to her, he would usually find some type of injury.

During Harden's conversation with appellant, appellant said that "he realized he had allowed this to happen to that child and allowed the child to die." Appellant further stated that he "let the wrong person in my house." Harden was convinced that appellant knew Richard was very cruel and hurting the children. Based on his conversation with appellant, Harden testified that it was obvious Richard's behavior was an ongoing problem, and appellant had done nothing about it.

Tracy Murphree, a Texas Ranger, testified that appellant talked about Richard tripping T.P., and Richard did it to be cruel. Murphree stated that appellant only recently allowed Richard to come to the house to visit the children because appellant felt they were not safe around him. When Murphree asked appellant why he allowed Richard to see the children if he thought Richard was very cruel, appellant simply answered, "He's my son." Murphree further testified that appellant stated he knew that Richard had harmed T.P. in the past. Appellant told Avis Clark, a Child Protective Services investigator, that Richard would throw T.P. in the air, which made him cry.

Although the testimony was contradictory as to whether or not Richard was ever alone with T.P. on the evening of September 3, appellant told Clark that on one occasion that day, he walked in and saw Richard sitting on top of T.P. T.P. was crying, but walked off when Richard got off of him.

Based on the evidence, a rational jury could have found that appellant knowingly caused the result because he was aware with reasonable certainty the injury would have been prevented had he performed the act that was omitted, which was protecting T.P. from Richard. This court held in *Patterson v. State* that the evidence did not support a conviction against a mother for knowingly causing serious bodily injury to her two children by failing to stop her boyfriend after he entered the children's

room and kidnapped them. 46 S.W.3d at 303. We held that there was "simply no evidence that appellant knew to a reasonable certainty that she could stop Woods and thus prevent injury to the children." *Id.* These facts are distinguishable because appellant was not faced with a situation in which he was frightened or intimidated by Richard. Appellant was aware of Richard's past behavior and even believed he was cruel, yet he still allowed the children to be in his presence unsupervised for short periods of time. Based on the evidence in the record, a rational jury could conclude beyond a reasonable doubt that appellant failed to remove and protect T.P. from Richard's presence knowing to a reasonable certainty that Richard would inflict bodily injury on him. Thus, the evidence is legally sufficient to show appellant knowingly caused bodily injury to T.P. by failing to protect T.P. from Richard. *But see Dusek*, 978 S.W.2d at 134 (holding that the evidence was legally insufficient to support "knowingly" causing serious bodily injury—a broken leg—when the mother knew that her fiancee was frequently impatient and angry with her son, but there was no evidence that he had ever before seriously injured him).

Accordingly, after reviewing the record and applying the appropriate standard of review,[4] we hold that the evidence is legally sufficient to support the jury's verdict.[5] Thus, we overrule appellant's second point.

### IV. Conclusion

Having overruled both of appellant's points, we affirm the trial court's judgment.

---

**4.** *See Emery,* 881 S.W.2d at 705; *Narvaiz,* 840 S.W.2d at 423.

**5.** *See Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789.