Catrenda JOHNSON, Appellant,

v.

The STATE of Texas.

No. 2–02–242–CR.

Court of Appeals of Texas, Fort Worth.

Oct. 16, 2003.

David M. Wacker, Denton, for Appellant.

Bruce Isaacks, Criminal Dist. Atty., Charles E. Orbison, Paige McCormick, and Earl Johnson, Asst. Dits. Attys., Denton, Matthew Paul, State Prosecuting Atty., Austin, for State.

PANEL B: DAUPHINOT, GARDNER, and WALKER, JJ.

## OPINION

LEE ANN DAUPHINOT, Justice.

Appellant Catrenda Resheil Johnson was charged by indictment with two counts of injury to a child. The first count charged her with intentionally or knowingly causing the child's injury by striking her with an unknown instrument. The second count charged Appellant with injury to a child by omission by failing to seek medical treatment. The jury acquitted Appellant on count one, convicted her on count two, injury of the twenty-two-month-old child by omission, and sentenced her to twelve years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant brings two points on appeal, challenging the legal and factual sufficiency of the evidence. Because we hold that the evidence is legally insufficient to support Appellant's conviction, we reverse the judgment of the trial court and render a judgment of acquittal.

### SUMMARY OF THE FACTS

Appellant is the mother of the twenty-two-month-old child complainant in this case. Close to 10:00 a.m. one morning, Appellant noticed that the child was not breathing and did not have a pulse. The child's eyes were "rolled up," and Appellant saw some blood on the child's tongue. Appellant administered CPR to the child and re-established the child's breathing. She then called her mother to report the child's condition and to ask for advice. Her mother told her to take the child to the hospital. Appellant quickly changed the baby's clothes and carried the baby to her car. Appellant's boyfriend, Kewon Benson, who had stayed with the child while Appellant went to a convenience store and a McDonald's earlier that morning, either drove or navigated. He either drove or directed her to drive to his apartment first. He gave her directions to

R.H.D. Hospital and exited the car. She then drove the baby to the hospital, arriving at least by 11:00 a.m. Upon arrival, the child was not breathing; she died after efforts to resuscitate her failed.

An autopsy revealed that the child had died from blunt-force trauma to the abdomen. A doctor testified that the injuries probably occurred within an hour of the child's being declared dead at the hospital, but the doctor could not testify that the injuries were not several hours old or perhaps only minutes old.

### Intentional or Knowing Injury to a Child

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict.[1] The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2] This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[3]

The relevant statute provides:

A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or intention-ally, knowingly, or recklessly by omission, causes to a child, elderly individual, or disabled individual:

(1) serious bodily injury.[4]

Injury to a child is a result-oriented offense.[5] The State was required to prove, therefore, that Appellant either had the specific intent to cause and did intentionally cause serious bodily injury to the child by denying the child reasonable medical treatment or that Appellant knowingly caused serious bodily injury to the child by denying the child reasonable medical treatment.[6] Proving simply that Appellant failed to provide medical care after the child suffered serious bodily injury would not satisfy the State's burden of causation under the statute.[7]

As Appellant points out, cases affirming convictions for injury by omission involve obvious injuries to the child over a period of time or a long delay in seeking aid or treatment. In *Patterson v. State*,[8] the evidence established that the appellant could clearly hear her children's screams and did not call 911 for more than six hours. In *Thornton v. State*,[9] evidence was admitted from which the jury could infer that Appellant had observed the string cutting off the blood flow to the child's penis for several days before seek-

1. *Cardenas v. State*, 30 S.W.3d 384, 389–90 (Tex.Crim.App.2000); *Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert. denied*, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993).

2. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim.App.), *cert. denied*, 522 U.S. 844, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997).

3. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

4. Tex. Penal Code Ann. § 22.04(a)(1) (Vernon 2003).

5. *Alvarado v. State*, 704 S.W.2d 36, 38–39 (Tex.Crim.App.1985).

6. *See* Tex. Penal Code Ann. § 22.04(a)(1); *Dusek v. State*, 978 S.W.2d 129, 134–35 (Tex. App.-Austin 1998, pet. ref'd).

7. *See* Tex. Penal Code Ann. § 22.04(a)(1); *Dusek*, 978 S.W.2d at 134–35.

8. 46 S.W.3d 294, 300, 304 (Tex.App.-Fort Worth 2001, no pet.).

9. 994 S.W.2d 845, 850–51 (Tex.App.-Fort Worth 1999, pet. ref'd).

ing medical treatment. In *Hill v. State*,[10] the parents chained the child and put a lock on the refrigerator to deny food to the child for a sufficient time period that the child starved to death. In the case now before us, there is no evidence that the child suffered a serious bodily injury because Appellant failed to provide medical care to the child.

The autopsy in the case now before us revealed that a blow to the abdomen compressed the child's internal organs and caused a clear and large laceration across the mesentery, resulting in a twenty-four percent blood loss. An extreme loss of blood causes irreversible shock. Doctor Spotswood, one of the medical examiners, testified that death could occur minutes to hours after the injuries, but that the child could not survive such injuries for days.

Emergency room physician Doctor Charles Dryden, Jr. testified that the child was limp and cool when a nurse first handed her to him. The child was not breathing and had no pulse. He began mouth-to-mouth resuscitation, intubated the child, began CPR, put in an intravenous line, gave her medication, and attached a heart monitor. The hospital staff attempted resuscitation for over half an hour, but were unsuccessful. Testimony established that bruising on the child did not develop until after she had been treated in the hospital, although the bruising was not caused by the treatment. Specifically, Dryden testified that when he first began working on the child he observed no signs of trauma or abuse on her body. A few hours after the child was pronounced dead, Dryden looked at her body again and saw bruising to the abdomen.

Similarly, when Dryden first saw the child, it was not apparent to him that she

had suffered a major blood loss. He also testified that the blood loss would not have been apparent to anyone else. He did believe, however, that anyone would have been able to recognize the child was ill. He testified that when a person sees that a child is very ill, it is reasonable to seek medical care, and the most rapid way is probably to call 911. He opined that the sooner a severely injured person receives medical attention, the better the chance of resuscitation, and that time is always a factor. There was no testimony that it was unreasonable for Appellant to drive her child to the hospital herself.

When questioned about facts pertinent to this case, Dryden testified that to know the amount of time that Appellant had available to recognize that the child had a serious problem and to get her to the hospital for life-saving treatment, Dryden would have to know the definite injury, how it occurred, and when it occurred. He could not testify how fast the child deteriorated after the mother noticed a problem.

While the evidence may or may not show that Appellant could have sought medical treatment faster than she did, such evidence is not sufficient to support a finding that Appellant either intentionally or knowingly *caused* serious bodily injury to the child by any delay in seeking medical treatment. Because the evidence fails to satisfy the causation element of the offense, the evidence is legally insufficient to support the judgment.

Our sister court in Austin was presented with a similar set of circumstances in *Dusek v. State*.[11] In that case, the child suffered injuries, including a broken leg. The Austin court held that the evidence was not sufficient to prove injury by omis-

---

**10.** 913 S.W.2d 581, 582 (Tex.Crim.App.1996).

**11.** 978 S.W.2d at 129.

sion by failure to provide medical care.[12] The court also held that there was insufficient evidence of intent to cause serious bodily injury by failure to seek medical care.[13] There was no evidence that Dusek caused or allowed the leg to be broken.[14]

Similarly, in the case now before this court, the jury specifically rejected the State's allegations that Appellant caused the injury to the child by striking her, and the evidence supports that finding. We have held that the evidence is not legally sufficient to support the conviction of injury by omission. Because the evidence is legally insufficient to support Appellant's guilt, we reverse the judgment of the trial court and render a judgment of acquittal on the offense charged.[15]

## RECKLESS INJURY TO A CHILD

■ In its brief, the State argues that even if this court holds that the evidence is legally insufficient to prove Appellant knowingly caused bodily injury to the child, we should nevertheless hold that Appellant acted recklessly in causing bodily injury to the child by omission. The jury charge permitted a conviction on the lesser included offense of reckless injury.[16]

The State argues that by finding that Appellant knowingly caused bodily injury to the child, the jury necessarily found that she recklessly did so.

A person acts recklessly with respect to the result of her conduct when that person is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur.[17] The State argues that the proof is legally sufficient to support a finding that Appellant was aware of and chose to consciously disregard a substantial unjustifiable risk that the child would suffer serious bodily injury "without prompt medical attention." We cannot agree. There were no bruises on the child before she received medical treatment. There was no indication that she had suffered a major blood loss.[18] When Appellant noticed the child was not breathing, she revived the child. Although she delayed thirty seconds to change the child's shirt, she immediately took the child to the hospital. While a call to 911 might have been faster, we do not understand the statute to empower this court to determine the best manner or method of seeking emergency treatment. We cannot say that when Appellant perceived the risk, she

---

12. *Id.* at 134.

13. *Id.* at 135.

14. *Id.*

15. TEX.R.APP. P. 43.2(c), 51.2(d); *Burks v. United States,* 437 U.S. 1, 16–18, 98 S.Ct. 2141, 2149–51, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 24–25, 98 S.Ct. 2151, 2154–55, 57 L.Ed.2d 15 (1978); *Clewis v. State,* 922 S.W.2d 126, 133 (Tex.Crim.App. 1996).

16. *See* TEX.CODE CRIM. PROC. ANN. art. 37.09(3) (Vernon 1981); *Collier v. State,* 999 S.W.2d 779, 782 (Tex.Crim.App.1999); *Bigley v. State,* 865 S.W.2d 26, 27–28 (Tex.Crim.App.1993); *Zuliani v. State,* 903 S.W.2d 812, 816 (Tex. App.-Austin 1995, pet. ref'd).

17. TEX. PENAL CODE ANN. § 6.03(c).

18. *Cf. Payton v. State,* 106 S.W.3d 326, 328–30 (Tex.App.-Fort Worth 2003, pet. filed) (holding evidence that child had rigid, extended abdomen, extensive bruising along his side, on his back, and on his bottom, dilated rectum, and bleeding penis at time of medical treatment; that he had been lethargic for about one hour before the 911 call; that his injuries occurred ten to sixteen hours before death; that Appellant used to be an emergency medical technician; that he had changed the child's diaper about two hours before the child arrived at the hospital; and that the child possibly could have survived had he received prompt medical attention was legally sufficient to support conviction for reckless injury to child).

failed to seek reasonable medical treatment. Nor can we find evidence that any delay occasioned by her changing the child's shirt or choosing to take the child to the hospital herself rather than to call 911 caused serious bodily injury to the child. No evidence in the record supports a conclusion that the child would have survived had Appellant acted differently. Consequently, we conclude that the evidence is also legally insufficient to support a conviction for the lesser included offense of reckless injury to a child.

The wanton killing of a young child is always tragic. No person of reasonable sensibilities could feel anything but anger and grief. But we are bound by the law and the record before us. The thoughtful dissent would hold that the evidence is legally sufficient to support a verdict of reckless injury by omission by failing to seek reasonable medical treatment. The dissent does not contend that Appellant failed to seek medical treatment. Rather, the dissent claims that Appellant waited ninety minutes to drive the child to the hospital.

Kewon Benson and Appellant woke up at 8:00 or 9:00 a.m. that morning. Appellant said that she went out to get something to eat. Benson testified that Appellant took the child with her, but the jury necessarily rejected this contention in acquitting Appellant of directly causing the injuries. No disinterested witness placed the child with Appellant during this period. Appellant was filmed at a convenience store at 9:39 a.m.; the child was not with her. The drive home took five minutes. Depending on the length of time between being filmed and starting her car and the length of time between arriving at the apartment complex and going from the car into the apartment, Appellant arrived at her apartment between 9:45 and 9:50 a.m. She went to the kitchen, divided the food,

and then went to the bedroom to find the child's tongue bleeding. Apparently this was Appellant's interpretation of the child's bleeding from the mouth. She called her mother and asked what to do. Her mother told her to take the child to the hospital immediately. She did not tell her to call 911 because she herself would never call 911. Appellant's mother, a registered nurse, and an assistant police chief from Leland Mississippi, Appellant's hometown, where she lived until moving to Dallas four months before her child's death, all testified that it was quicker to drive someone to the hospital than to call 911 in Leland. Appellant herself had told Dallas Police Officer Daniel Johnson that she did not call 911 "because she didn't know how long it would take them to get there and that she was just going to take the baby to the doctor herself, to the hospital herself."

Benson refused to help Appellant with the ailing child. After calling her mother, Appellant changed the child's vomit-covered shirt and left her apartment for the hospital. Either she drove or Benson drove to his apartment while she held her child. Before exiting the car, Benson gave Appellant directions to R.H.D. Medical Center, and she drove directly there. She arrived by 11:00 a.m., one hour and twenty-one minutes after she was videotaped at the convenience store.

Every action of Appellant was aimed at caring for her child, yet the dissent characterizes her asking her mother what to do for her child as delay. The dissent refers to Appellant's waiting for Benson to emerge from the bathroom before leaving for the hospital as another delay, but there is no evidence of this in the record. Even if Appellant had waited on him to accompany her, it is difficult to understand why that would be unreasonable, considering that she had moved to North Dallas from

Mississippi less than four months earlier and was unfamiliar with the location of hospitals. There is no support in the record for the dissent's claim of an hour-and-a-half delay in driving the child to the hospital.

The dissent also appears to suggest that the child's injuries occurred while she was running errands with Appellant. There is no evidence from any source that the injuries occurred before Appellant left to get food, except for a concession from medical witnesses that it was "possible" that the injuries were more than an hour old when the child was presented at the hospital. The jury, however, rejected Appellant's complicity in causing the injuries. The bruising appeared to have been accomplished with a tennis shoe, and Benson's tennis shoes were later found in Appellant's apartment. If Appellant was not complicit in causing the injuries, and if the injuries were most likely inflicted an hour or so before death, on the record before us, the injury could only have occurred when Appellant was not present. The only time Appellant was not present was when she was running errands and, according to her testimony, Benson was caring for the child. There is no evidence that the child would have survived had she received treatment sooner.

Additionally, the medical testimony does not support the dissent's theories. The injuries were so recent that no bruising appeared when the child arrived at the hospital. Trained medical personnel were not aware of the blood loss. There is no evidence that the child stopped breathing before Appellant arrived at the apartment. No one except Benson claimed the child left with Appellant, and the jury apparently believed that he caused the injuries. There is no evidence of any additional serious bodily injury resulting from failure to seek reasonable medical treatment,

whether caused intentionally, knowingly, or recklessly.

For the reasons outlined above, we are compelled to reverse the trial court's judgment and to render a judgment of acquittal.

WALKER, J. filed a dissenting opinion.

SUE WALKER, Justice, dissenting.

## I. INTRODUCTION

I respectfully dissent. I would hold that the evidence is legally, but not factually, sufficient to support Johnson's conviction for the lesser-included offense of recklessly causing serious bodily injury to Destinee by failing to obtain reasonable medical care. Accordingly, I would reverse the trial court's judgment and remand this case for a new trial on the lesser-included offense.

## II. RECKLESS INJURY TO A CHILD BY OMISSION

Count II of the indictment alleged that Johnson:

[D]id then and there intentionally or knowingly cause serious bodily injury to Destinee Jones, a child 14 years of age or younger, by omission, to-wit: by failing to obtain reasonable medical care, and the defendant had a legal or statutory duty to act.

*See* TEX. PENAL CODE ANN. § 22.04(a)(1) (Vernon 2003) (injury to a child). The court's charge authorized the jury to find Johnson guilty of the lesser-included offense of recklessly causing serious bodily injury to Destinee. TEX. CODE CRIM. PROC. ANN. art. 37.09(3) (Vernon 2003). Because the jury found Johnson guilty as she was charged in count II of intentionally or knowingly injuring Destinee by omission, the failure to obtain reasonable medical treatment, it necessarily found that this

omission was reckless. *Payton v. State,* 106 S.W.3d 326, 329 (Tex.App.—Fort Worth 2003, pet. ref'd); *Patterson v. State,* 46 S.W.3d 294, 304 (Tex.App.—Fort Worth 2001, no pet.); *Dusek v. State,* 978 S.W.2d 129, 135 (Tex.App.—Austin 1998, pet. ref'd). Thus, we may modify the trial court's judgment to reflect a conviction for this lesser-included offense if the evidence supports it. *Patterson,* 46 S.W.3d at 304; *Dusek,* 978 S.W.2d at 135.

A person acts recklessly with respect to the result of her conduct when that person is aware of, but consciously disregards, a substantial and unjustifiable risk that the result will occur. TEX. PENAL CODE ANN. § 6.03(c). The risk must be of such a nature and degree that its disregard constitutes a gross deviation for the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. *Id.* Injury to a child is a "result of conduct" offense, so it is not enough for the State to simply prove that the defendant engaged in the conduct with the requisite intent. *Lee v. State,* 21 S.W.3d 532, 540 (Tex. App.—Tyler 2000, no pet.). Instead, the State must also prove that the actor defendant caused the result with the requisite criminal intent. *Id.*

## A. Evidence

Johnson testified that on Sunday, December 3, 2000, at approximately 9:30 a.m., she found twenty-two-month-old Destinee laying in bed with her eyes rolled up, with a split tongue with blood on it. Destinee had no pulse and was not breathing. Johnson administered CPR to Destinee, and the child started breathing. Liquid came out of Destinee's mouth and nose, and Johnson understood that Destinee was very sick and needed medical attention. Despite this knowledge, Johnson admitted she changed Destinee's shirt and called her mother before taking Destinee to the hospital.

Johnson initially told hospital personnel and provided a sworn statement to the police that her boyfriend Kewon Benson (Benson) came over at approximately 10:00 a.m. that morning, bringing breakfast with him. At trial, however, Johnson testified that Benson spent the night with her and that she left to go purchase breakfast at McDonald's, leaving Destinee in Benson's care. Johnson testified at trial that when she returned, she found Destinee nonresponsive and not breathing.

Johnson testified that Benson smoked marijuana that morning and claimed that he admitted he was stoned. After Johnson resuscitated Destinee, Benson did not offer to help, did not call an ambulance, and was just "standing around." Johnson said that she ran out of the apartment and Benson got her keys off the counter. Johnson said she got into the passenger side of the car, holding Destinee. She said Benson drove her car to his apartment and got out of the car, leaving her to drive Destinee to a hospital. Johnson said she obtained directions from Benson and drove to the hospital emergency room.

Benson testified to a different version of facts. He testified that Johnson picked him up from his apartment at approximately 3:45 a.m. on Sunday, December 3. They went to her apartment, had sex, and went to sleep. Between 8:00 and 9:00 a.m., Johnson left the apartment to go to McDonald's, and she took Destinee with her. Benson testified that while Johnson and Destinee were gone, he got up, "broke up" some marijuana, and prepared to go in the bathroom and smoke. Johnson and Destinee returned just as Benson was "on the verge of finishing rolling it up," and he went into the bathroom to smoke "some weed." Benson testified that while he was

smoking in the bathroom, he heard Destinee crying and heard Johnson saying, "I got to clean up Destinee." Benson said he did not hear anything else and exited the bathroom "20, 25 minutes—about 40 minutes, 45 minutes" later. When Benson exited the bathroom, Johnson said, "Look at Dee, look at Dee." Johnson then drove Benson home and said that she was going to take Destinee to the hospital.

Emergency room medical personnel testified that Destinee showed no signs of life when Johnson brought her into the emergency room; she was "very limp, very pale, and cool." Although they tried to resuscitate Destinee for about thirty minutes, they were unable to revive her. Dr. Dryden, an emergency room physician involved in the resuscitation efforts on Destinee, testified that if someone noticed Destinee limp with no pulse at approximately 9:30 a.m., it would not constitute reasonable medical treatment to delay her transport to the hospital for an hour to an hour-and-a-half. According to Dr. Dryden, "anyone would be able to recognize that this child was very ill." He testified that "the sooner a severely injured person is brought to medical attention, yes, they have a much better chance of—of—of being resuscitated. Time is always a factor."

Dr. Sheila Spotswood, a forensic pathologist, testified that Destinee suffered blunt "force trauma" from blows to the front of her abdomen, causing internal bleeding and causing several internal organs to be injured when they were compressed against Destinee's backbone. Dr. Spotswood explained that Destinee had bruising in the right side of her diaphragm, on the thoracal surface, and on the serosal surface. She suffered lacerations in multiple areas, including the mesentery, pancreas, and colon. Yet none of Destinee's major arteries were severed. Blood is an extreme irritant to the abdomen, and right

after the injury causing bleeding in her abdomen, Destinee would have begun to exhibit symptoms that could range from irritation, to pain in the abdomen, nausea, vomiting, not wanting to eat, being fussy, crying, and eventually as more blood was lost, to becoming lethargic, going into shock, and dying. These symptoms would be such that it would be apparent to anyone observing Destinee that she was seriously ill. Based on Destinee's condition when she arrived at the emergency room, Dr. Spotswood opined that Destinee's injury occurred sometime after 7:00 a.m.

## B.  Legal Sufficiency of the Evidence

### 1.  Reckless Criminal Intent

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Burden v. State,* 55 S.W.3d 608, 612 (Tex.Crim.App. 2001). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. When performing a legal sufficiency review, we may not sit as a thirteenth juror, re-evaluating the weight and credibility of the evidence and, thus, substituting our judgment for that of the fact finder. *Dewberry v. State,* 4 S.W.3d 735, 740 (Tex. Crim.App.1999), *cert. denied,* 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000).

Viewing the evidence in the light most favorable to the jury's verdict, I believe the evidence is legally sufficient to permit a reasonable finder of fact to conclude that

Johnson was aware of and disregarded a substantial and unjustifiable risk that her failure to take Destinee immediately to the hospital would result in serious bodily injury to Destinee. Johnson knew that Destinee had stopped breathing and had no pulse, that her eyes were rolled back into her head, that she·had·blood on her tongue, and that she required CPR to revive her. Nonetheless, Johnson consciously disregarded the substantial risk that Destinee's condition would continue to deteriorate and that Destinee would again stop breathing if she failed to immediately drive Destinee to the emergency room for medical treatment. The risk that Destinee's condition would continue to deteriorate and that Destinee would again stop breathing was of such a nature and degree that Johnson's disregard of that risk for an hour to an hour and a half constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from Johnson's standpoint. Thus, the jury could have believed that although Johnson recognized Destinee's deteriorating condition—the fact that Destinee was not breathing, was in distress, and needed medical treatment—she nonetheless called her mother, changed Destinee's shirt, waited for Benson to emerge from the bathroom, and drove him to his apartment all before she took Destinee to the hospital. I would hold that legally sufficient evidence exists to establish Johnson acted recklessly.

## 2. Causation

Johnson also claims, and the majority agrees, that no evidence exists that any reckless omission by her *caused* serious bodily injury to Destinee. Johnson contends no evidence exists that, even if she had taken Destinee directly to the emergency room, Destinee would have lived. In other words, Johnson claims that it was the initial injury to Destinee's abdomen, which the jury acquitted her of causing, that produced Destinee's serious bodily injury, not any reckless omission on her part.

A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient. TEX. PENAL CODE ANN. § 6.04(a). Under this section, two combinations may exist to satisfy the requisite causal connection between appellant's conduct and the harm that followed: (1) the appellant's conduct may be sufficient by itself to have caused the harm, regardless of the existence of a concurrent cause; or (2) the appellant's conduct and the other cause together may be sufficient to have caused the harm. *Robbins v. State*, 717 S.W.2d 348, 351 (Tex.Crim.App. 1986); *Umoja v. State*, 965 S.W.2d 3, 8 (Tex.App.—Fort Worth 1997, no pet.). Section 6.04(a) further defines and limits the "but for" causality for concurrent causes by the last phrase, "unless the concurrent cause was clearly sufficient to produce the result *and* the conduct of the actor clearly insufficient." *Robbins*, 717 S.W.2d at 351 (emphasis added). Thus, evidence of causation will be legally insufficient only when the conduct of the accused, standing alone, was "clearly insufficient." *Marvis v. State*, 36 S.W.3d 878, 881 (Tex. Crim.App.2001) (Price, J., concurring); *St. Clair v. State*, 26 S.W.3d 89, 100 (Tex. App.—Waco 2000, pet. ref'd).

Here, the evidence establishes that a concurrent cause, the stomping-type injury to Destinee's abdomen, was clearly sufficient to cause serious bodily injury to Destinee. Dr. Spotswood testified that immediately after Destinee suffered the blows to her abdomen she would have begun

experiencing symptoms. Left unchecked, the blood loss into Destinee's abdomen would continue until Destinee went into shock and died. The evidence likewise establishes that Johnson's conduct, her failure to rush Destinee immediately to the hospital, and the other cause, the blows to Destinee's abdomen, together were in fact sufficient to have caused serious bodily injury to Destinee because Destinee died. *See Robbins,* 717 S.W.2d at 351. The only question remaining, then, is whether the conduct of Johnson, standing alone, was "clearly insufficient" to cause serious bodily injury to Destinee. *See St. Clair,* 26 S.W.3d at 100.

The record, viewed in the light most favorable to the jury verdict, shows that Destinee would have begun having symptoms of her abdominal injury before she went into cardiac arrest. Destinee's symptoms would have been apparent to anyone, and it would have been obvious that she was very ill. The jury could have believed Benson's testimony that Johnson took Destinee with her to McDonald's that morning[1] and, thus, could have inferred that Johnson observed Destinee's increasingly severe symptoms. Clearly, because of the progressive nature of Destinee's injury, the jury could reasonably infer that Destinee suffered additional "serious bodily injury" as her symptoms progressed and her organs shut down due to Johnson's failure to provide reasonable medical treatment for Destinee's abdominal injuries. *See Payton,* 106 S.W.3d at 329 (recognizing jury could reasonably infer defendant caused serious bodily injury to child by failing to provide medical treatment for blunt force trauma to child's head

and abdomen); *see also Kennerly v. State,* 40 S.W.3d 718, 720 (Tex.App.—Waco 2001, no pet.) (holding evidence appellant failed to remove elderly person from puddle of spilled bleach sufficient to support conviction for recklessly causing serious bodily injury when appellant knew effect of prolonged exposure to bleach).

The causation issue in this case is similar to the causation challenge in *St. Clair,* 26 S.W.3d at 100. In *St. Clair,* the defendant drunk driver hit a vehicle driven by a woman who was eight weeks' pregnant. *Id.* at 93. The next day, the woman suffered a miscarriage. *Id.* The State charged the defendant with intoxication assault. The medical evidence at trial indicated that a variety of medical conditions could cause a miscarriage and also that a car wreck could cause a miscarriage. *Id.* at 100. On appeal, the defendant claimed that because no medical expert testified that the wreck did cause the miscarriage, the evidence was legally insufficient to support his conviction for intoxication assault. *Id.* The court of appeals applied penal code section 6.04(a)'s two-part test and looked to whether a "concurrent cause was clearly sufficient to produce the result *and* the conduct of the actor clearly insufficient." *Id.* (emphasis added). Based on the evidence that a car wreck could cause a miscarriage, the court of appeals held that the defendant's conduct standing alone was not "clearly insufficient" to cause the miscarriage and, consequently, held that the evidence was legally sufficient to support the jury's finding that the defendant was guilty of intoxication assault. *Id.* at 101.

---

1. Neither witnesses nor the videotape established whether Destinee was with Johnson or not when Johnson stopped at McDonald's and the convenience store that morning. Although the jury acquitted Johnson of causing the stomping injury to Destinee, the jury nonetheless could have believed that Destinee was with Johnson and that Destinee's injury occurred immediately before Johnson took Destinee to McDonald's and the convenience store.

Here, the medical evidence establishes that Destinee would have experienced increasingly severe symptoms before she experienced cardiac arrest. According to Benson, Johnson took Destinee with her to pick up breakfast from McDonald's, so the jury could have inferred that Johnson saw Destinee's increasing physical distress yet chose not to seek medical treatment for Destinee. Additionally, Dr. Dryden's testimony that "time is always a factor" and that an hour or hour and one-half delay in obtaining medical treatment for a baby who has experienced cardiac arrest is unreasonable, when viewed in the light most favorable to the jury's verdict, supports the inference that time was a factor in this case and that if Destinee had obtained medical treatment within a reasonable time frame she could have lived. I cannot say that Johnson's conduct, standing alone, was clearly insufficient to cause serious bodily injury to Destinee. *See Payton*, 106 S.W.3d at 329; *St. Clair*, 26 S.W.3d at 100. I would hold that the evidence is legally sufficient to support the jury's implied finding that Johnson recklessly caused serious bodily injury to Destinee by failing to obtain reasonable medical treatment. I would overrule Johnson's first point.

### C. Factual Sufficiency of the Causation Evidence

In her second point, Johnson claims that the evidence is factually insufficient to support her conviction. Specifically, she argues that factually insufficient evidence exists to prove that any omission on her part caused serious bodily injury to Destinee. In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000); *Clewis v. State*, 922 S.W.2d 126, 129, 134 (Tex.Crim.App.1996). Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the available evidence. *Johnson*, 23 S.W.3d at 11. Therefore, we must determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the verdict, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Id.* In performing this review, we are to give due deference to the fact finder's determinations. *Id.* at 8–9; *Clewis*, 922 S.W.2d at 136. We are not empowered to substitute our judgment for that of the fact finder's own credibility and weight-of-the-evidence determinations. *Johnson*, 23 S.W.3d at 12. Consequently, we may find the evidence factually insufficient only where necessary to prevent manifest injustice. *Id.* at 9, 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App. 1997).

To make a determination of factual insufficiency, a complete and detailed examination of all the relevant evidence is required. *Johnson*, 23 S.W.3d at 12. A proper factual sufficiency review must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

We therefore now turn to a review, in addition to the evidence recited above, of the most important and relevant evidence supporting Johnson's complaints that factually insufficient evidence exists to show that a reckless omission by her caused Destinee serious bodily injury. Medical personnel treating Destinee could not pinpoint a time at which the abdominal injury to Destinee occurred, indicating that it could have occurred hours or minutes be-

fore Destinee's arrival at the emergency room.

Dr. Spotswood testified:

Q. Would this [Destinee's abdominal injury] have been a fast bleed or a slow bleed?

A. It is hard to say without knowing exactly what the source of the blood was. It was probably rapid, though, just because of the location. When you get retroperitoneal hemorrhage, the hemorrhage in the back of the abdomen, those injuries tend to bleed rapidly even though we don't know exactly what vessel they came from.

Q. From the time that the blows are struck that caused the injuries that we are talking about to the time of the death of the person who has these injuries, can you say exactly how long it would be?

A. No.

Q. Are you talking minutes? Are we talking hours? Or are you able to say?

A. It could be minutes to hours. I would not say days.

Q. When you say "hours," are we talking one hour up to twelve hours?

A. I can't say exactly. I think from these injuries, this would most likely be pretty rapid. Closer to the one hour range. Maybe a few hours, but I can't say with certainty.

A paramedic in the emergency room at the hospital, George Harrell, testified that he checked Destinee when she came into the emergency room for any signs of abuse and that she had none. Later, when Harrell accompanied Johnson to see Destinee's body, the body had bruises on the abdomen. Harrell said the bruises were not there when he initially checked Destinee for signs of abuse. Dr. Dryden also testified that the bruises on Destinee's abdomen appeared after she arrived at the hospital and confirmed that the resuscitation procedures did not cause the bruises. Dr. Spotswood testified that if a bruise was not apparent at the time Destinee arrived at the hospital, but became apparent later, that would indicate that not a great deal of time elapsed between the abdominal injury and the time Destinee arrived at the hospital.

Viewing all of the evidence in a neutral light, favoring neither party, the evidence in support of the existence of a vital fact—that Johnson's delay in seeking medical treatment for Destinee caused serious bodily injury in addition to or compounding the injuries Destinee had already suffered from the blunt force blows to her abdomen—is factually too weak to support it. *See Goodman v. State*, 66 S.W.3d 283, 285 (Tex.Crim.App.2001). The only evidence presented concerning whether Johnson's reckless failure to obtain reasonable medical care for Destinee caused serious bodily injury to Destinee while supporting the inference that this fact is true, is simply too weak by itself to support a rational finding. *See id.* That is, although the jury could have inferred from Dr. Dryden's testimony that "time is always a factor" and that an hour to hour and one-half delay in obtaining medical treatment for a baby who has experienced cardiac arrest is unreasonable, that time was a factor in this case and that if Destinee had obtained medical treatment within a reasonable time frame she could have lived, this evidence is simply too weak to support a rational finding. No other evidence exists to prove the fact that Johnson's failure to obtain reasonable medical care for Destinee caused Destinee serious bodily injury. The defense did not call any medical experts. The medical experts called by the State uniformly agreed that they could not determine the amount of time that elapsed between Destinee's injury and her

arrival at the emergency room. No one testified that if Destinee had arrived at the hospital earlier she would have lived. To the contrary, the State's medical experts all agreed that because the bruises to Destinee's abdomen appeared after her arrival at the hospital, she arrived at the hospital not too long after the abdominal injury was inflicted. Consequently, I would hold that the evidence is factually insufficient to establish the causation element of the offense: that serious bodily injury to Destinee would not have resulted "but for" Johnson's failure to obtain reasonable medical treatment either operating alone or concurrently with Destinee's abdominal injuries. *See* TEX. PENAL CODE ANN. § 6.04(b). *Cf. Payton*, 106 S.W.3d at 329 (holding evidence legally sufficient when doctor testified child may have lived, although possibly with long-term health problems, if he had received medical care shortly after the injury instead of ten to twelve hours later). The evidence establishes that Destinee's abdominal injuries were clearly sufficient to produce serious bodily injury to Destinee and is factually insufficient to establish that Johnson's reckless omission in failing to seek reasonable medical treatment for Destinee in fact caused any different or exacerbated injury or result. I would sustain Johnson's second point.

### III. CONCLUSION

I would hold that legally sufficient but factually insufficient evidence exists that Johnson recklessly caused serious bodily injury to Destinee by failing to obtain reasonable medical treatment. Accordingly, I would reverse the trial court's judgment and remand this cause for trial on this lesser-included offense. *See Clewis*, 922 S.W.2d at 133–34; *Patterson*, 46 S.W.3d at 304; *Dusek*, 978 S.W.2d at 135.