COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




RONALD BERMUDEZ,


 Appellant,


v.



THE STATE OF TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-05-00304--CR



Appeal from the


168th Judicial District Court


of El Paso County, Texas 


(TC# 20050D01707) 



O P I N I O N


 Ronald Bermudez appeals his conviction for injury to an elderly individual. A jury found
him guilty and the trial court sentenced him to 10 years' imprisonment. Appellant raises four
issues on appeal, in which he challenges the legal and factual sufficiency of the evidence to
sustain his conviction, raises jury charge error, and contends the trial court erred in allowing
hearsay testimony from the complainant. We affirm.

 On the evening of March 27, 2005, Juanita Romero and her family were sitting outside
talking when they heard "fighting-type" yelling and cursing coming from the Bermudez home
across the street. Ms. Romero recognized the Appellant's voice. As the yelling continued,
Ms. Romero saw Nestor Bermudez, who was seventy or seventy-one-years-old, leave his house
and walk to the front gate of his property. As he went through the gate, Mr. Bermudez began
yelling, "Help me, somebody help me." Ms. Romero and her brother walked over to him and 
Mr. Bermudez told them that his son, Appellant, was hitting him and that he wanted to get out of
there.

 Ms. Romero and her brother walked Mr. Bermudez across the street to their house and
they sat outside as Mr. Bermudez began telling them what had happened. Ms. Romero recalled
that Mr. Bermudez looked shaken up when she was talking to him. He explained that he and
Appellant had been drinking beers at a bar and that Appellant wanted him to spend more money
than he wanted to. Appellant got mad and hit him in the face. Mr. Bermudez stayed with
Ms. Romero for over an hour, during which time Appellant walked over to Ms. Romero's house
three times, yelling at them, demanding that his father come back, and threatening to call the
police because they had kidnaped his father. Ms. Romero testified that Appellant was very
angry, drunk, and cursing.

 Later, Mr. Bermudez wanted to retrieve a jacket from his home. Ms. Romero's brother
accompanied Mr. Bermudez and Ms. Romero followed behind them. Ms. Romero and her
brother stopped at the gate and watched as Mr. Bermudez approached the side door of his house
and pulled his house keys out of his pocket. As Mr. Bermudez tried to open the door, the door
was flung open and Mr. Bermudez was knocked to the ground. Appellant emerged yelling
profanities. Ms. Romero then saw Appellant punch Mr. Bermudez in the face with his fist and
kick Mr. Bermudez twice in the stomach area. According to Ms. Romero, Appellant punched
Mr. Bermudez with such force that the impact was audible. She remembered Mr. Bermudez
saying "[d]on't, don't hit me, mijo. Don't" during the attack. After he was hit, Ms. Romero saw
he had a hurt and pained look on his face. Ms. Romero's brother ran over and pulled Appellant
off of his father. Ms. Romero called the police while her brother held back Appellant. 
Ms. Romero then took Mr. Bermudez back to her house and they waited for the police. The
police arrived quickly and spoke with Mr. Bermudez in the backyard. Ms. Romero saw
Mr. Bermudez break down into tears as he spoke with the police officers.

 Officer Danny Conway of the El Paso Police Department and his partner Officer Eric
Garcia were dispatched to the scene to investigate a family assault. As Officer Conway spoke
with Appellant, he noticed that Appellant's breath smelled of alcohol and that he appeared "less
than sober." Appellant claimed that he, his father, and some of his friends were at a
neighborhood bar when he and his father got into an argument because his father wanted to go
home, but Appellant was not ready to leave. Mr. Bermudez continued to tell Appellant he
wanted to leave and thirty to forty minutes later, Appellant eventually took his father home. 
Appellant and his friends returned to the bar briefly before leaving to buy beer and then returning
to Appellant's house. While Appellant and his friends were in the backyard drinking, an
argument took place and he broke a couple of chairs. According to Appellant, his father then got
up and left the house. After talking with Appellant, Officer Conway then spoke with Officer
Garcia who had been interviewing witnesses at Ms. Romero's home. When Officer Conway
confronted Appellant about the contrary account of events, Appellant said, "No, I didn't do it. I
wouldn't hurt my dad." Based upon the officers' investigation, they decided to arrest Appellant.

 In Issues One and Two, Appellant challenges the sufficiency of the evidence to sustain his
conviction. Specifically, Appellant asserts the evidence was legally and factually insufficient
because the State failed to prove that Appellant caused bodily injury to his father.


Standards of Review

 In reviewing the legal sufficiency of the evidence, we must view the evidence in the light
most favorable to the verdict to determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
319, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); Vodochodsky v. State, 158 S.W.3d 502, 509
(Tex.Crim.App. 2005). More particularly, sufficiency of the evidence should be measured by the
elements of the offense as defined by the hypothetically correct jury charge for the case. Malik v.
State, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). The trier of fact is the sole judge of the
weight and credibility of the evidence. Margraves v. State, 34 S.W.3d 912, 919 (Tex.Crim.App.
2000). In conducting our review, we may not re-evaluate the weight and credibility of the
evidence and substitute our judgment for that of the fact finder. King v. State, 29 S.W.3d 556,
562 (Tex.Crim.App. 2000); Dewberry v. State, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999). Any
inconsistencies in the evidence are resolved in favor of the verdict. Curry v. State, 30 S.W.3d
394, 406 (Tex.Crim.App. 2000).

 In reviewing the factual sufficiency of the evidence, we must determine whether
considering all the evidence in a neutral light, the jury was rationally justified in finding guilt
beyond a reasonable doubt. Zuniga v. State, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004),
overruled on other grounds by Watson v. State, 204 S.W.3d 404 (Tex.Crim.App. 2006). 
Evidence can be factually insufficient if the evidence supporting the verdict, considered by itself,
is too weak to support the finding of guilt beyond a reasonable doubt, or contrary evidence is so
strong that guilt cannot be proven beyond a reasonable doubt. Id. at 484-85. Our evaluation,
however, should not intrude upon the fact finder's role as the sole judge of the weight and
credibility given to any witness's testimony. See Cain v. State, 958 S.W.2d 404, 407
(Tex.Crim.App. 1997). We will not set aside the judgment unless the evidence supporting the
verdict is so weak as to be clearly wrong and manifestly unjust. Zuniga, 144 S.W.3d at 481. A
clearly wrong and manifestly unjust verdict occurs where the jury's finding "shocks the
conscience" or "clearly demonstrates bias." Id. An opinion addressing factual sufficiency must
include a discussion of the most important and relevant evidence that supports the appellant's
complaint on appeal. Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

Bodily Injury to an Elderly Individual

 In this case, the State was required to prove beyond a reasonable doubt that Appellant
intentionally or knowingly caused bodily injury to Nestor Bermudez, an elderly individual, by
striking Mr. Bermudez's head with his hand or by striking Mr. Bermudez's body with his foot. 
See Tex.Pen.Code Ann. § 22.04(a)(3), (c)(2)(Vernon Supp. 2006). Under the Penal Code
"bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." 
Tex.Pen.Code Ann. § 1.07(a)(8)(Vernon Supp. 2006).

 Appellant points out the lack of physical evidence of Mr. Bermudez's injuries in this
case. Appellant also asserts that the injuries Mr. Bermudez allegedly suffered could have been
occurred as a result of being knocked down when the door was flung open, rather than caused by
any punch or kick. However, viewing the evidence in the light most favorable to the verdict, the
evidence shows that Ms. Romero saw Appellant punch Mr. Bermudez, an elderly man, in the
face with his fist and kick him twice in the stomach area. Appellant punched Mr. Bermudez with
such force that the impact was audible. During direct examination, Ms. Romero was asked,
"[a]fter you saw Nestor Bermudez get hit, did it look like he enjoyed that?" Ms. Romero replied,
"No. It was a pained looked on his face, a hurt and pained look on his face." From the context
of her response, the jury could have reasonably inferred that Ms. Romero was referring to an
expression of physical pain, rather than Mr. Bermudez's emotional state during the assault.

 A fact finder may infer that a victim suffered physical pain because people of common
intelligence understand pain and some of the natural causes of pain. Goodin v. State, 750 S.W.2d
857, 859 (Tex.App.--Corpus Christi 1988, pet. ref'd); see also Wawrykow v. State, 866 S.W.2d
96, 100 (Tex.App.--Beaumont 1993, no pet.)(rational fact finder could have inferred that blows
from appellant's fist to police officer's head area hurt the officer or caused her physical pain
beyond a reasonable doubt). In this case, the jury could have reasonably inferred that Appellant's
punch to Mr. Bermudez's face with his fist, which was delivered with such force that it was
audible to Ms. Romero who was standing some distance away, along with Mr. Bermudez's
pained expression after being hit in the face, was evidence that Appellant caused Mr. Bermudez
physical pain, that is, bodily injury, beyond a reasonable doubt. Therefore, we conclude the
evidence is legally sufficient to sustain Appellant's conviction for bodily injury to an elderly
individual.

 In his factual sufficiency challenge, Appellant points out that even if Ms. Romero's
testimony about the pained and hurt look on Mr. Bermudez's face was referring to bodily injury,
there was no testimony that the look on Mr. Bermudez's face was a result of being punched or
kicked. Appellant also argues that there was no testimony from Ms. Romero specifying that the
pained and hurt look referred to physical suffering. The jury, as the fact finder and sole judge of
the weight and credibility of the witness testimony, could have reasonably concluded that
Ms. Romero's observation of the pained expression on Mr. Bermudez's face was a direct result
of the punch Appellant delivered to Mr. Bermudez's face. After viewing all the evidence in a
neutral light, we find that it was not too weak to support the finding of guilt beyond a reasonable
doubt. Therefore, we conclude the evidence is both legally and factually sufficient to sustain
Appellant's conviction. Issues One and Two are overruled.

 In Issue Three, Appellant contends the trial court committed egregious error by including
both "nature of conduct" and "result of conduct" language in the definitions of the culpable
mental states in the jury charge. Specifically, Appellant complains that the court's charge to the
jury failed to limit the definitions of intentionally and knowingly to the result of Appellant's
conduct. Appellant claims that the charge as submitted effectively lessened the State's burden of
proof, causing him to suffer egregious harm.

 When reviewing charge error, we first determine if an error actually exists in the charge. 
Middleton v. State, 125 S.W.3d 450, 453 (Tex.Crim.App. 2003); Almanza v. State, 686 S.W.2d
157, 171 (Tex.Crim.App. 1984). If there is jury charge error, we must then determine if the error
caused sufficient harm to warrant reversal. Hutch v. State, 922 S.W.2d 166, 170-71
(Tex.Crim.App. 1996); Almanza, 686 S.W.2d at 171. Preservation of charge error does not
become an issue until we assess harm. Ngo v. State, 175 S.W.3d 738, 743 (Tex.Crim.App.
2005). The degree of harm necessary for reversal depends on whether the appellant preserved the
error by objection. Id. When the defendant fails to object, as in this case, we will not reverse for
jury charge error unless the record shows "egregious harm" to the defendant. Id. at 743-44;
Almanza, 686 S.W.2d at 171.

 Here, the jury charge, in relevant part, stated:

 A person acts intentionally, or with intent, with respect to the nature of
his conduct or to a result of his conduct when it is his conscious objective or
desire to engage in the conduct or cause the result.


 A person acts knowingly, or with knowledge, with respect to the nature of
his conduct or to circumstances surrounding his conduct when he is aware of the
nature of his conduct or that the circumstances exist. A person acts knowingly, or
with knowledge, with respect to a result of his conduct when he is aware that his
conduct is reasonably certain to cause the result.


. . .



 Now, if you find from the evidence beyond a reasonable doubt that on or
about the 27th day of March 2005, in El Paso County, Texas, the Defendant,
RONALD BERMUDEZ, did then and there intentionally or knowingly, by act,
cause bodily injury to NESTOR BERMUDEZ, an elderly individual, by then and
there striking NESTOR BERMUDEZ about the head with Defendant's hand, then
you will find the Defendant, RONALD BERMUDEZ, guilty of injury to an
elderly individual, as alleged in Paragraph A of the indictment.


 Or, if you find from the evidence beyond a reasonable doubt that on or
about the 27th day of March 2005, in El Paso County, Texas, the Defendant,
RONALD BERMUDEZ, did then and there intentionally or knowingly, by act,
cause bodily injury to NESTOR BERMUDEZ, an elderly individual, by striking
him about the body with the Defendant's foot, then you will find the Defendant,
RONALD BERMUDEZ, guilty of injury to an elderly individual, as alleged in
Paragraph B of the indictment. (Verdict Form 'B')


 Unless you so find from the evidence beyond a reasonable doubt, or if you
have a reasonable doubt thereof, you will acquit the Defendant, RONALD
BERMUDEZ, of injury to an elderly individual, as alleged in the indictment.
(Verdict Form 'A')[Emphasis in original]. 


 There are three conduct elements that can be involved in an offense: (1) the nature of
conduct; (2) the result of the conduct; and (3) the circumstances surrounding the conduct. See
Tex.Pen.Code Ann. § 6.03 (Vernon 2003); McQueen v. State, 781 S.W.2d 600, 603
(Tex.Crim.App. 1989). Injury of an elderly individual is a result-oriented crime. See Haggins v.
State, 785 S.W.2d 827, 828 (Tex.Crim.App. 1990); Johnson v. State, 121 S.W.3d 133, 135
(Tex.App.--Fort Worth 2003, pet. ref'd). The gravamen of the offense is the intent to cause the
result, specifically bodily injury to an elderly. See Kelly v. State, 748 S.W.2d 236, 239
(Tex.Crim.App. 1988). Thus, the statutory definitions in the charge on the culpable mental states
should have been limited to result of conduct element which applies to the indicted offense. See 
Patrick v. State, 906 S.W.2d 481, 492 (Tex.Crim.App. 1995); Ramirez v. State, 976 S.W.2d 219,
222 (Tex.App.--El Paso 1998, pet. ref'd).

 Having found error, we must next determine whether the error resulted in egregious harm. 
See Hutch, 922 S.W.2d at 171 (egregious harm analysis required when charging error is not
preserved). Errors that "result in egregious harm are those which affect 'the very basis of the
case,' deprive the defendant of a 'valuable right,' or 'vitally affect a defensive theory.'" Id.,
quoting Almanza, 686 S.W.2d at 172. Reversal is warranted only if the error is so egregious and
created such harm that Appellant did not have a fair and impartial trial. Almanza, 686 S.W.2d at
171. In our analysis, we assess the degree of harm in light of: (1) the entire jury charge; (2) the
state of the evidence including contested issues and the weight of the probative evidence; (3)
arguments of counsel; and (4) any other relevant information revealed by the record of the trial as
a whole. Hutch, 922 S.W.2d at 171; Almanza, 686 S.W.2d at 171. "In assessing harm resulting
from the inclusion of improper conduct elements in the definitions of culpable mental states, we
'may consider the degree, if any, to which the culpable mental states were limited by the
application portions of the jury charge.'" Patrick, 906 S.W.2d at 492. Further, the record must
show that a defendant has suffered actual, rather than merely theoretical harm from the charge
error. Almanza, 686 S.W.2d at 174.

 After reviewing the jury charge as a whole, we observe that the application paragraph
correctly instructed the jury to find Appellant guilty if he intentionally or knowingly "by act,
caus[ed] bodily injury" to Nestor Bermudez. The terms "intentionally" and "knowingly" clearly
modified the phrase, "by act, cause bodily injury," thereby instructing the jury to only apply the
result of conduct language found in the abstract definitions in the jury charge. Despite the trial
court's failure to limit the abstract definitions of the culpable mental states, the application
paragraph correctly instructed the jury to convict based only on proof of the result of conduct
element for the indicted offense, thus we can not say that Appellant has shown he suffered
egregious harm. Issue Three is overruled.

 In Issue Four, Appellant contends the trial court erred in allowing the State to present
hearsay statements made by Nestor Bermudez through Ms. Romero's testimony. Specifically,
Appellant complains that Ms. Romero was allowed to testify that Appellant's father told her that
Appellant had hit him in the face, earlier in the day, while Appellant and his father were at a bar,
because his father did not want to spend any more money on beer.

 We review the trial court's ruling on the admission of evidence under the excited
utterance exception to the hearsay rule under an abuse of discretion standard. Zuliani v. State, 97
S.W.3d 589, 595 (Tex.Crim.App. 2003). Under this standard, we will not reverse unless the trial
court decision was so clearly wrong as to lie outside the zone of reasonable disagreement. Id.;
Montgomery v. State, 810 S.W.2d 372, 391 (Tex.Crim.App. 1991)(Op. on reh'g).

 An excited utterance is an exception to the rule prohibiting hearsay statements from being
admissible as evidence. See Tex.R.Evid. 802, 803(2). The excited utterance exception permits
admission of a hearsay statement "relating to a startling event or condition made while the
declarant was under the stress of excitement caused by the event or condition." Tex.R.Evid.
803(2); Arzaga v. State, 86 S.W.3d 767, 775 (Tex.App.--El Paso 2002, no pet.). The excited
utterance exception is based on the belief that such statements are trustworthy because they are
involuntary and do not allow the declarant the opportunity for reflection and fabrication. Zuliani,
97 S.W.3d at 595. "In other words, the statement is trustworthy because it represents an event
speaking through the person rather than the person speaking about the event." Id.

 A statement qualifies as an excited utterance if: (1) the statement is the product of a
startling event; (2) the declarant was still dominated by the emotion, excitement, fear, or pain of
the event; and (3) the statement relates to the circumstances of the startling event. See Apolinar
v. State, 155 S.W.3d 184, 186-87 (Tex.Crim.App. 2005); McFarland v. State, 845 S.W.2d 824,
846 (Tex.Crim.App. 1992); Gutierrez v. State, 85 S.W.3d 446, 455 (Tex.App.--Austin 2002, pet.
ref'd). It is not dispositive that the statement is an answer to a question or that it was separated
by a period of time from the startling event, although these are among the factors to be
considered in deciding whether a statement is admissible under the exception. Salazar v. State,
38 S.W.3d 141, 154 (Tex.Crim.App. 2001); Penry v. State, 691 S.W.2d 636, 647
(Tex.Crim.App. 1985). The critical determination is whether the emotions, excitement, fear, or
pain of the event still dominated the declarant at the time of the statement. Zuliani, 97 S.W.3d at
596; King v. State, 953 S.W.2d 266, 269 (Tex.Crim.App. 1997). Further, the event that triggers
the excited utterance need not be the crime itself. Ross v. State, 154 S.W.3d 804, 809
(Tex.App.--Houston [14th Dist.] 2004, pet. ref'd).

 Here, Ms. Romero testified that she heard "fighting-type" yelling coming from the
Bermudez house. She recognized Appellant's voice as the person yelling and using profanity. It
went on for a while before Ms. Romero saw Mr. Bermudez exit his house. Mr. Bermudez
walked out to his gate and started to yell towards Ms. Romero. Ms. Romero described his
demeanor as "panicky" and that he was acting like something was wrong. According to
Ms. Romero, Mr. Bermudez yelled "Help me, somebody help me." When Ms. Romero came to
his aid and asked him what was wrong, Mr. Bermudez said Appellant was hitting him and that he
"wanted to get out of there." Once they returned to Ms. Romero's house across the street,
Mr. Bermudez began telling them what happened and told them about what had occurred at the
bar. Ms. Romero testified that less than five minutes passed from the time Mr. Bermudez
initially talked to her to the time he sat outside her house and told her about what had happened. 
According to Ms. Romero, Mr. Bermudez was telling them everything and appeared really
shaken up as he was talking.

 Appellant argues there was no evidence that Mr. Bermudez was dominated by the
emotions of the incident that occurred at the bar, therefore, these statements should not have been
admitted. However, the incident that provokes the excited utterance need not be the crime itself. 
See Ross, 154 S.W.3d at 809. Here, the startling event was clearly a heated verbal confrontation
between Appellant and Mr. Bermudez, from which Mr. Bermudez fled in fear and panic with a
desire to "get out of there." In the grip of that emotion, Mr. Bermudez yelled for help. Within
minutes, Mr. Bermudez, who was still shaken up, recounted to Ms. Romero and company what
had happened at the bar, that is, that Appellant had hit him in the face when he became angry at
Mr. Bermudez for not wanting to spend any more money on beer. A reasonable person could
conclude that Mr. Bermudez made the statements about the bar attack while still dominated by
the emotions, excitement, fear, or pain by the startling event that provoked Mr. Bermudez to flee
his home only moments before. Therefore, we conclude the trial court did not abuse its
discretion by admitting the complained-of statements into evidence under the excited utterance
exception. Issue Four is overruled.

 We affirm the trial court's judgment.


September 20, 2007

 DAVID WELLINGTON CHEW, Chief Justice


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)